**No. 24-13513**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

MITCHELL MARBURY,

*Plaintiff-Appellant*,

v.

DEWAYNE ESTES, WARDEN III, ET AL.,

*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NO. 24:18-CV-009250-CLS-JHE

---

# SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLANT MITCHELL MARBURY

---

Jill Warnock
*Counsel of Record*
David M. Zionts
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-5637
jwarnock@cov.com

*Counsel for Plaintiff-Appellant Mitchell Marbury*

November 19, 2025

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rules 26.1-2(c) and 42-1(a), undersigned Counsel for Plaintiff-Appellant hereby submits a full list of persons and entities known by Counsel to have an interest in the outcome of this case:

1. Alabama Attorney General's Office;

2. Albritton, Benjamin Howard, counsel for Appellees;

3. Covington & Burling LLP, counsel for Appellant;

4. Barrett Bowdre, Alexander, Solicitor General of Alabama;

5. England, III, Hon. John H., U.S. Magistrate Judge for the Middle District of Alabama;

6. Estes, DeWayne, former Alabama Department of Corrections Warden, Defendant-Appellee;

7. Graham, Carla, Alabama Department of Corrections Captain, Defendant-Appellee;

8. LaCour, Hon. Edmund G. Jr., U.S. District Judge for the Northern District of Alabama*;

9. Marbury, Mitchell, Plaintiff-Appellant;

10. Marshall, Steve, Attorney General of Alabama;

11. Smith, Hon. Lynwood, U.S. Senior District Judge for the Northern District of Alabama;

12. Specks, Cedric, former Alabama Department of Corrections Warden, Defendant-Appellee;

13. Warnock, Jill, Covington & Burling LLP, counsel for Plaintiff-Appellant.

14. Zionts, David M., Covington & Burling LLP, counsel for Plaintiff-Appellant.

Pursuant to Circuit Rule 26.1-3(b), Counsel further certifies that, to the best of Counsel's knowledge, no publicly traded company or corporation has an interest in the outcome of the case or appeal. Counsel will file an amended certificate of interested persons should he become

* Judge LaCour was Solicitor General of Alabama when this appeal was initiated.

aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-4.

*/s/ Jill Warnock*
Jill Warnock

*Counsel for Plaintiff-Appellant*
*Mitchell Marbury*

November 19, 2025

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Circuit Rule 28-1(c), Plaintiff-Appellant Mitchell Marbury respectfully requests oral argument. The facts and legal arguments in this case are sufficiently complex that the Court's review will be aided by oral argument.

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF AUTHORITIES ........ iv

STATEMENT OF JURISDICTION ........ vi

INTRODUCTION ........ 1

STATEMENT OF THE ISSUE ........ 3

STATEMENT OF THE CASE ........ 3

A. Factual Background ........ 3

B. Procedural History ........ 6

SUMMARY OF ARGUMENT ........ 11

LEGAL STANDARD ........ 13

ARGUMENT ........ 14

A REASONABLE JURY COULD CONCLUDE FROM THE EVIDENCE OF ROUTINE VIOLENCE AT ST. CLAIR THAT MR. MARBURY FACED A SUBSTANTIAL RISK OF SERIOUS HARM ........ 14

A. Viewing the Evidence in the Light Most Favorable to Mr. Marbury, the Record Supports a Finding that He Faced a Substantial Risk of Serious Harm. ........ 15

B. The District Court Erroneously Disregarded Mr. Marbury's Sworn Pro Se Pleadings, Which Provide Further Evidence from Which a Reasonable Jury Could Conclude that He Faced a Substantial Risk of Serious Harm ........ 24

CONCLUSION ........................................................................................ 28

CERTIFICATE OF COMPLIANCE ........................................................ 29

CERTIFICATE OF SERVICE ................................................................ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 9, 12, 25, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 16

*Blanco v. Samuel*,
91 F.4th 1061 (11th Cir. 2024) .......... 25

*Boykins v. Dunn*,
696 F. Supp. 3d 1061 (N.D. Ala. 2023) .......... 18, 19, 23

*Caldwell v. Warden, FCI Talladega*,
748 F.3d 1090 (11th Cir. 2014) .......... 13, 14, 15, 24, 27

*Chapman v. AI Transport*,
229 F.3d 1012 (11th Cir. 2000) .......... 25

*Chapman v. Dunn*,
129 F.4th 1307 (11th Cir. 2025) .......... 7

*Cotton v. Cooper*,
No. 22-12927, 2024 WL 340033 (11th Cir. Jan. 30, 2024) .......... 16, 17, 21

*Dimanche v. Brown*,
783 F.3d 1204 (11th Cir. 2015) .......... 22

*Purcell ex rel. Est. of Morgan v. Toombs Cnty.*,
400 F.3d 1313 (11th Cir. 2005) .......... 2, 16, 19, 21, 23

*Farmer v. Brennan*,
511 U.S. 825 (1994) .......... 14

*Hale v. Tallapoosa Cnty.*,
50 F.3d 1579 (11th Cir. 1995) .......... 17, 19, 23

*Harrison v. Culliver*,
746 F.3d 1288 (11th Cir. 2014) .......... 19

*Lane v. Philbin*,
835 F.3d 1302 (11th Cir. 2016) .......... 17, 21, 26

*Lodge v. Kondaur Cap. Corp.*,
750 F.3d 1263 (11th Cir. 2014) .......... 22

*Marbury v. Warden*,
No. 22-10916, 2022 WL 17175549 (11th Cir. Nov. 23, 2022) .......... 2, 9, 10

*Marbury v. Warden*,
936 F.3d 1227 (11th Cir. 2019) .......... 4, 13, 14, 16, 20

*Marsh v. Butler Cnty.*,
268 F.3d 1014 (11th Cir. 2001) (en banc) .......... 16, 17, 26

*Perry v. Thompson*,
786 F.2d 1093 (11th Cir. 1986) .......... 24

**Statutes**

28 U.S.C. § 1915A(b)(1) .......... 7

42 U.S.C. § 1983 .......... 3, 6, 7, 8

**Other Authorities**

Alabama Dep't of Corrs., *Monthly Statistical Report for December 2016* (F.Y. 2017), https://doc.alabama.gov/StatReports.aspx .......... 22

Alabama Dep't of Corrs., *Monthly Statistical Report for December 2017* (F.Y. 2018), https://doc.alabama.gov/StatReports.aspx .......... 22

## STATEMENT OF JURISDICTION

Plaintiff Mitchell Marbury's complaint raises claims for violations of his federal constitutional rights under 42 U.S.C. § 1983. *See* Doc. 9 (Am. Compl.). The district court had subject matter jurisdiction to consider those claims under 28 U.S.C. § 1331. The district court entered summary judgment against Mr. Marbury on October 7, 2024 (Doc. 90), and Mr. Marbury timely appealed on October 28, 2024 (Doc. 91). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

Mitchell Marbury is an inmate at St. Clair Correctional Facility, one of Alabama's most violent prisons. During both of his assignments to St. Clair, he repeatedly warned prison officials that he feared for his safety and requested protective segregation. Prison officials, including the Defendants here, ignored those well-founded concerns. In 2016, an inmate stabbed Mr. Marbury multiple times in the dayroom. In early 2018, after *again* pleading with prison officials for protection, and *again* having those pleas fall on deaf ears, Mr. Marbury was *again* violently attacked—in his cell—requiring a three-day hospitalization for head trauma. After his 2018 attack, Mr. Marbury filed the present suit against certain prison officials claiming their deliberate indifference to his substantial risk of harm.

The district court has now twice rushed to dismiss this case, making this the second time Mr. Marbury's case has come before the Court following a premature grant of summary judgment. In its prior decision, the Court vacated the district court's judgment and held that Mr. Marbury was entitled to discovery into the risk of violence at St. Clair before being required to marshal evidence in support of his claims. *See*

*Marbury v. Warden*, No. 22-10916, 2022 WL 17175549, at *2-4 (11th Cir. Nov. 23, 2022). Yet on remand, the district court erred again and granted summary judgment despite the existence of a genuine factual dispute after said discovery was conducted.

Discovery revealed incident reports documenting approximately 200 inmate-on-inmate assaults over a two-year period at St. Clair, including multiple stabbings and two deaths. Twenty-four of those assaults and one of those deaths occurred in the very housing block where Mr. Marbury was attacked. In a facility housing approximately 1,000 inmates, this level of violence—amounting to roughly 10% of the population annually—would permit a reasonable jury to conclude that violence "was the norm." *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1322 (11th Cir. 2005).

The district court nonetheless faulted Mr. Marbury for failing to "context[ualize]" the frequency of assaults at St. Clair. That decision ignored this Court's precedent, misapplied the objective standard for assessing substantial risk, and required the district court to improperly step into the role of factfinder rather than consider the record in the light most favorable to Mr. Marbury as the non-moving party. The court also

failed to credit Mr. Marbury's sworn allegations, which in a *pro se* case count as evidence at the summary judgment stage, and which describe repeated requests for protection, prior assaults on him and other inmates, and a disturbing lack of institutional control—including a supervisor returning a confiscated weapon to an inmate. Taken together, the evidence uncovered in discovery and Mr. Marbury's sworn statements satisfy the standard for surviving summary judgment. The Court should reverse and remand for further proceedings.

## STATEMENT OF THE ISSUE

Whether the district court erred in granting summary judgment to Defendants by finding that Mr. Marbury failed to establish a genuine issue of material fact regarding the substantial risk of harm he faced—despite evidence of approximately 200 inmate-on-inmate assaults over a two-year period at a facility housing around 1,000 inmates—thereby precluding his Eighth Amendment failure-to-protect claim under 42 U.S.C. § 1983.

## STATEMENT OF THE CASE

### A. Factual Background

Between February and April 2016, while temporarily housed at St. Clair Correctional Facility, Mr. Marbury sought protection from prison

officials and repeatedly requested to be transferred to a safer dormitory. *Marbury v. Warden*, 936 F.3d 1227, 1231 (11th Cir. 2019); Doc. 87 (Report & Recommendation of Aug. 12, 2024) at 5. He informed officials that he had witnessed several inmate-on-inmate assaults and feared for his safety. *Marbury*, 936 F.3d at 1231. His requests went ignored and on April 23, 2016, Mr. Marbury's concerns materialized when he was stabbed multiple times and hit in the face in the prison's dayroom. *Id.* at 1232. Mr. Marbury suffered a "puncture wound to the base of his skull, multiple stab wounds to his shoulder area, a broken nose, and a gash two centimeters deep in his back." *Id.* at 1239 (Rosenbaum, J., dissenting).[1]

In September 2017, Mr. Marbury was temporarily assigned to St. Clair once again. Doc. 87 at 5. And, once again, he repeatedly alerted prison officials to the danger he faced. *Id.* Given his prior attack, Mr. Marbury expressed fear of retaliation upon his reassignment to St. Clair. *Id.* On October 19, 2017, he requested that Defendant Warden Cedric Specks place him in segregation due to safety concerns. *Id.*

[1] Mr. Marbury brought a separate suit after this stabbing, but this Court affirmed summary judgment for the defendants. *See Marbury*, 936 F.3d at 1231.

Rather than take protective action, Warden Specks advised Mr. Marbury to obtain a weapon or pay gang members for protection. *Id.* Mr. Marbury also approached Defendant Captain Carla Graham for protection, but she dismissed his concerns by stating that the inmate who had previously stabbed him had been transferred. *Id.* at 6. On November 22, 2017, Mr. Marbury sent a written request to another official, Defendant Warden DeWayne Estes, seeking segregation for his safety. *Id.* Prison officials never placed Mr. Marbury in segregation despite his pleas. Doc. 9 at 11.

Mr. Marbury's fears were well-founded. He witnessed multiple stabbings during his reassignment to St. Clair and observed a disturbing lack of institutional control, including inmates occupying unauthorized cells and a supervisor returning a confiscated weapon to an inmate. Doc. 87 at 6. These conditions contributed to a hostile and unsafe environment in the L-Block, where Mr. Marbury was housed. *Id.* Indeed, discovery revealed that between January 2016 and January 2018, approximately 196 inmate-on-inmate assaults occurred at St. Clair. *See* Doc. 84-1 (incident reports produced by Defendants); Doc. 87 at 10. Many of these assaults led to serious injuries, including two inmate deaths.

Doc. 84-1; Doc. 87 at 10. And approximately 24 of these assaults occurred in the very block where Mr. Marbury was housed. *See* Doc. 84-1; Doc. 87 at 10-11.

On January 9, 2018, while in his own cell with the door open, another inmate violently attacked Mr. Marbury by striking him in the head with a twenty-pound dumbbell bar, knocking him unconscious. Doc. 87 at 6; Doc. 9 at 12. Mr. Marbury sustained serious injuries from the assault and was transported to the University of Alabama Birmingham's emergency room and hospitalized for three days due to head trauma. Doc. 87 at 7.

**B. Procedural History**

Mr. Marbury, proceeding *pro se*, initiated this 42 U.S.C. § 1983 action on June 18, 2018, alleging that prison officials failed to protect him from the 2018 violent assault by another inmate while he was housed at St. Clair Correctional Facility. *See* Doc. 1 (Complaint). He later filed an amended complaint naming former Wardens DeWayne Estes and Cedric Specks, and Captain Carla Graham (together, the "Prison Officials"), as defendants in their individual capacities, and sought monetary, injunctive, and declaratory relief. *See* Doc. 9.

Under the screening process outlined in 28 U.S.C. § 1915A(b)(1), the magistrate judge recommended that Mr. Marbury's Eighth Amendment claims against the Prison Officials—specifically for failing to protect him from a substantial risk of inmate-on-inmate violence and for not providing adequate security—should be allowed to proceed, while recommending dismissal of the remaining claims. *See* Doc. 18 (Report & Recommendation of May 21, 2020). On September 29, 2020, the district court accepted the recommendation. *See* Doc. 19 (Order Adopting R&R of May 21, 2020).

The magistrate judge ordered the Prison Officials to file "Special Report[s]" addressing Mr. Marbury's allegations. Doc. 20 at 4-5. As a Member of this Court recently noted, district courts in Alabama frequently use a "special report process"—one that is neither provided for by the Federal Rules of Civil Procedure nor codified in the district courts' local rules. *Chapman v. Dunn*, 129 F.4th 1307, 1320 (11th Cir. 2025) (Jordan, J., concurring). "In practice," the process consists of (1) "an order issued soon after a *pro se* prisoner files a complaint under 42 U.S.C. § 1983 requiring the submission of a special report by the defendant," and (2) "the later possible *sua sponte* conversion of the special report by the

magistrate judge or the district court into a motion for summary judgment by the defendant." *Id.*

After many extensions and prodding from the court, the Prison Officials filed special reports. *See* Docs. 35, 45, 58. Consistent with the usual special report process, the magistrate judge construed the Prison Officials' reports as motions for summary judgment and notified Mr. Marbury that he had 21 days to respond to said motions. Docs. 47, 59. Mr. Marbury filed several responses opposing summary judgment. Docs. 49, 52, 60. He also moved for leave to conduct discovery, Docs. 50, 51, because under the special report process, the only discovery permitted without court approval was limited initial disclosures relating to the defendants' knowledge of the case, *see* Doc. 20 at 5-7 (Order for Special Reports). In his motion, Mr. Marbury requested discovery on incidents involving inmate-on-inmate violence, certain grievances by employees, and certain administrative regulations, among other requests. Docs. 50, 51.

On January 27, 2022, the magistrate judge recommended that the district court grant the "motions for summary judgment" as construed from the special reports and deny Mr. Marbury's motion for additional

discovery. Doc. 62 (Report & Recommendation of Jan. 27, 2022). Over Mr. Marbury's objections, the district court adopted the magistrate judge's recommendation and dismissed Mr. Marbury's claims with prejudice. Doc. 64.

Mr. Marbury appealed. Doc. 67. This Court issued an opinion on November 23, 2022, vacating the district court's judgment and concluding that Mr. Marbury was entitled to discovery prior to summary judgment. *Marbury*, 2022 WL 17175549, at *4. Specifically, the Court recognized the "general rule" that a plaintiff "must present affirmative evidence showing a genuine issue of material fact, 'even where the evidence is likely to be within the possession of the defendant,'" "only holds true 'as long as the plaintiff has had a full opportunity to conduct discovery.'" *Id.* at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). While the Court noted that Mr. Marbury's discovery requests may have been overbroad, it found that the district court could have easily narrowed the scope of discovery, "such as by limiting discovery of these documents to only the previous year or the previous few years." *Id.* at *3. The Court remanded for the district court to conduct limited discovery. *Id.* at *4.

On remand, Mr. Marbury renewed his motion for leave to conduct additional discovery. Doc. 77. The magistrate judge granted his request in part, ordering the Prison Officials to produce incident reports relating to inmate-on-inmate assaults with or without weapons that resulted in serious or non-serious injuries from January 9, 2016 to January 9, 2018—the two years preceding Mr. Marbury's assault. Doc. 79. The magistrate judge also granted in part Mr. Marbury's request for employee complaints received by the Prison Officials that "raise concerns about the threat of increased violence at St. Clair Correctional Facility" between January 9, 2016 and January 9, 2018. *Id.* at 3-4. The magistrate judge denied as vague and overbroad Mr. Marbury's request for administrative policies regarding "security" at St. Clair on the basis that it "is impossible to narrow down what specific information Marbury seeks based on this request." *Id.* at 4.

The Prison Officials supplemented their special reports with responses to Mr. Marbury's discovery requests. Doc. 84. Once again, the magistrate judge construed the supplements to the special reports as motions for summary judgment to which Mr. Marbury filed an opposition. Docs. 85, 86. The magistrate judge recommended granting

summary judgment for the Prison Officials because, in his view, Mr. Marbury failed to show that he faced a substantial risk of serious harm. Doc. 87 at 9-11. Specifically, the magistrate judge found that while the evidence "certainly demonstrate[d] that inmate-on-inmate assaults occurred at St. Clair, with some resulting in serious injury which required outside medical attention, and two deaths," Mr. Marbury had failed to put such numbers "into context" with the total number of inmates at St. Clair and the number of assaults in his specific cellblock. *Id.* at 10-11. The district court adopted the recommendation on October 7, 2024. Doc. 89. Mr. Marbury timely filed this appeal, Doc. 91, and on August 19, 2025, this Court *sua sponte* appointed the undersigned to represent Mr. Marbury in his appeal, ECF No. 20-2.

## SUMMARY OF ARGUMENT

The Supreme Court has held that "to survive the defendant's motion [for summary judgment], [a plaintiff] need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257. Mr. Marbury has done so here.

The district court erred in granting summary judgment to the Prison Officials by concluding that Mr. Marbury failed to demonstrate a substantial risk of serious harm. The record, viewed in the light most favorable to Mr. Marbury, contains ample evidence from which a reasonable jury could find that conditions at St. Clair Correctional Facility posed an objectively serious threat to inmate safety. Mr. Marbury presented incident reports documenting approximately 200 inmate-on-inmate assaults over a two-year period, including multiple stabbings and two deaths—24 of which occurred in the very housing block where he was attacked. These facts, combined with Mr. Marbury's repeated warnings to the Prison Officials and their failure to act other than to suggest Mr. Marbury obtain a weapon or pay a gang for protection, would permit a reasonable jury to find that violence at St. Clair was pervasive and that Mr. Marbury faced a substantial risk of serious harm. Under Eleventh Circuit precedent, such conditions are actionable under the Eighth Amendment.

Additionally, the district court failed to properly credit Mr. Marbury's sworn complaint and affidavit, which contained specific testimony of prior assaults, threats, and institutional indifference to

inmate safety. By weighing Mr. Marbury's testimony and making credibility determinations, the court improperly stepped into the role of a jury. The district court further violated well-established precedent requiring liberal construction of *pro se* filings and recognition of sworn factual allegations as evidence. Mr. Marbury's sworn allegations, given their proper credit, combined with the assault rate revealed in the incident reports, provide ample evidence for a reasonable jury to find that Mr. Marbury faced a substantial risk of harm.

## LEGAL STANDARD

This Court "review[s] the district court's grant of summary judgment de novo, 'view[ing] all the evidence and draw[ing] all reasonable inferences in the light most favorable to the non-moving party.'" *Marbury*, 936 F.3d at 1232 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014)). Summary judgment is only warranted where the evidence in the record, "viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Caldwell*, 748 F.3d at 1098 (quotation marks omitted). "Where, as here, an inmate proceeded pro se in the district court, his

summary judgment pleadings are construed liberally and 'specific facts' alleged in his sworn complaint can suffice to generate a genuine dispute of fact." *Marbury*, 936 F.3d at 1232; *see Caldwell*, 748 F.3d at 1098.

## ARGUMENT

### A REASONABLE JURY COULD CONCLUDE FROM THE EVIDENCE OF ROUTINE VIOLENCE AT ST. CLAIR THAT MR. MARBURY FACED A SUBSTANTIAL RISK OF SERIOUS HARM

It is well-settled that the "Eighth Amendment 'imposes a duty on prison officials' to 'take reasonable measures to guarantee the safety of the inmates.'" *Caldwell*, 748 F.3d at 1099 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations adopted). In particular, under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) (alteration adopted). When officials fail to uphold that duty, prisoners may bring claims against the officials for their deliberate indifference by failing to protect them from harm. "To survive summary judgment on a deliberate indifference failure-to-protect claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm;

(2) the defendants' deliberate indifference to that risk; and (3) causation." *Caldwell*, 748 F.3d at 1099 (quotation marks omitted).

The district court granted summary judgment for the Prison Officials solely on the basis that Mr. Marbury had failed at the first step of his claim, a showing of substantial risk of serious harm, and did not consider whether Mr. Marbury met the other elements of his claim. *See* Doc. 89 at 6; Doc. 87 at 9-11. But under this Court's precedent and viewing the evidence in the light most favorable to Mr. Marbury, the record permits a reasonable jury to conclude that he faced a substantial risk of serious harm.

### A. Viewing the Evidence in the Light Most Favorable to Mr. Marbury, the Record Supports a Finding that He Faced a Substantial Risk of Serious Harm.

The Court applies an objective standard to assess whether the circumstances faced by the plaintiff constitute a substantial risk of serious harm. *Caldwell*, 748 F.3d at 1099. "To satisfy this element under a generalized risk of violence theory, a plaintiff must show that the conditions of confinement at the time of the officials' conduct 'were extreme and posed an unreasonable risk of serious injury to his future

health or safety.'" *Cotton v. Cooper*, No. 22-12927, 2024 WL 340033, at *2 (11th Cir. Jan. 30, 2024) (quoting *Marbury*, 936 F.3d at 1233).

While "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, . . . confinement in a prison where violence and terror reign is actionable." *Purcell*, 400 F.3d at 1320. A plaintiff can make such a showing with evidence that "serious inmate-on-inmate violence was the norm or something close to it." *Id.* at 1322. In *Purcell* itself, the Court held the level of violence was insufficient to establish a substantial risk of harm because the plaintiff produced evidence of only "two to three pretty serious inmate fights over a period of nine months and of not very many other fights over a four-year span." *Id.* at 1323 n.21.

Unlike in *Purcell*, where the violence was limited and sporadic, the full Court held in *Marsh v. Butler County* that "conditions in a jail facility that allow prisoners ready access to weapons, fail to provide an ability to lock down inmates, and fail to allow for surveillance of inmates pose a substantial risk of serious harm to inmates." 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). The Court held that the

conditions alleged in *Marsh* gave rise to a significant risk of harm even though the record did not include a history of inmate-on-inmate assaults resulting in serious injuries. *Id.* at 1034.

Similarly, in *Hale v. Tallapoosa County*, the Court held that a plaintiff met his summary judgment burden of showing a substantial risk of serious harm when he "produced evidence that inmate-on-inmate violence occurred regularly" and that "the violence was severe enough to require medical attention and even hospitalization on occasion." 50 F.3d 1579, 1583 (11th Cir. 1995).

Additionally, the Eleventh Circuit recently held that a reasonable jury could find an "excessive risk of prisoner-on-prisoner violence" where the plaintiff personally "witnessed multiple incidents of beatings, stabbings, and rape," and the facility's "violent and unsafe conditions" were enabled by understaffing, overcrowding, widespread access to weapons, and inadequate supervision. *Cotton*, 2024 WL 340033, at *2; *see also Lane v. Philbin*, 835 F.3d 1302, 1307-08 (11th Cir. 2016) (reversing dismissal of a complaint where allegations of beatings, high gang participation, widespread possession of weapons, and understaffing

at a Georgia state prison permitted the reasonable inference that "violence and terror were the norm").

Another district court in Alabama, addressing the same prison as the one at issue here, recently concluded that "[a] reasonable jury could find that the generalized risk of prison violence at St. Clair posed a substantial risk of harm." *Boykins v. Dunn*, 696 F. Supp. 3d 1061, 1080 (N.D. Ala. 2023). The record in that case demonstrated that "[b]etween 2016 and 2017, St. Clair was substantially more violent than any correctional facility analyzed in the cases the parties cite; over a two-year period, there were sixty-seven inmate-on-inmate assaults with a weapon," and that [b]etween October 2016 and September 2017, St. Clair had ninety-nine reported victims of inmate-on-inmate assault, which is approximately ten percent of its inmate population." *Id.* at 1080-81. The court concluded that "[t]he frequency and severity of violence" at St. Clair "is staggering." *Id.* at 1082.

Under this caselaw, Mr. Marbury produced sufficient evidence to meet his burden that he faced a substantial risk of serious harm. The incident reports produced during discovery revealed that approximately 200 inmate-on-inmate assaults occurred over a two-year period—112

inmate-on-inmate assaults in 2016 and 84 in 2017. Doc. 89 at 4. Several of these assaults resulted in "serious injury, requiring outside medical attention, and two *deaths*." *Id.* (emphasis added). This averages to nine assaults per month in 2016 and seven per month in 2017. That is indeed "staggering," *Boykins*, 696 F. Supp. 3d at 1080, and a jury could reasonably conclude that the frequency of violence at St. Clair is "regular," *Hale*, 50 F.3d at 1583, or "the norm or something close to it." *Purcell*, 400 F.3d at 1322. These statistics stand in stark contrast to the two to three assaults over a nine-month period that were insufficient in *Purcell*. *Id.*; *see also Harrison v. Culliver*, 746 F.3d 1288, 1294 n.6 (11th Cir. 2014) (less than one incident per month involving a weapon over three-year period was not enough to establish a constant threat of violence).

The magistrate judge and district court did not give proper weight to this evidence. They recognized that discovery "certainly demonstrate[d] that inmate-on-inmate assaults occurred at St. Clair, with some resulting in serious injury which required outside medical attention, and two deaths." Doc. 87 at 10. Yet they discounted the evidence on the basis that Mr. Marbury failed to "put these numbers into

context," because the record does not "indicate the number of inmates housed at St. Clair . . . when these assaults occurred." *Id.* Additionally, the magistrate judge did not view the number of assaults in the L-Block, where Mr. Marbury was housed, as "excessive." *Id.* at 10-11; *see also* Doc. 89 at 4-5.

The magistrate judge's conclusion that Mr. Marbury failed to contextualize the frequency of assaults at St. Clair overlooks this Court's precedent and misapplies the objective standard for assessing substantial risk. Mr. Marbury presented evidence of approximately 200 assaults over two years—including serious injuries and two deaths—which is comparable to the "regularity" of assaults found sufficient in *Hale*, exceeds those at issue in *Boykins*, and far surpasses the levels deemed insufficient in *Purcell* and *Harrison*. This evidence plainly creates a factual dispute regarding the risk of harm.

The magistrate judge appeared to rely on this Court's statement in Mr. Marbury's prior case that he had not provided the court "context" regarding the total prison population or where the attacks occurred. Doc. 87 at 10 (citing *Marbury*, 936 F.3d at 1234). But there, the *only* allegation of inmate-on-inmate stabbings came from Mr. Marbury's

statement that he witnessed fifteen such stabbings during his time at St. Clair. *Marbury*, 936 F.3d at 1234. This is a far cry from the current situation where discovery has revealed prison-generated incident reports indicating that 112 inmate-on-inmate assaults occurred in 2016 and 84 in 2017—including two deaths. Doc. 89 at 4. A jury could reasonably infer from this data and the severity of the assaults, as well as Mr. Marbury being attacked in his own cell, that inmate-on-inmate violence was the "norm or something close to it." *See Purcell*, 400 F.3d at 1322; *Cotton*, 2024 WL 340033, at *2; *Lane*, 835 F.3d at 1307-08.

In any event, the record does provide the "context" the district court found lacking, and certainly enough context that a reasonable jury could find in Mr. Marbury's favor. First, the incident reports produced in discovery show that at least 24 incidents occurred in or around the L-block where Mr. Marbury was housed. Doc. 84-1 at 1-156; *see also* Doc. 87 at 10-11 (finding "about 23 assaults" occurred in the L/M Block between 2016 and 2017). A majority of the incidents in the L-bock included stabbings. Doc. 84-1 at 1-156. There was even a death where a prison official found an inmate unresponsive and covered in "a red substance that appeared to be blood." *Id.* at 220. A reasonable jury could

certainly conclude that this was an "excessive" number of assaults in Mr. Marbury's housing location.

Second, if the district court believed that the relevance of the nearly 200 inmate-on-inmate assaults could not be evaluated without knowing the total number of inmates at St. Clair, the court could have and should have given Mr. Marbury a chance to make that showing. This Court can take judicial notice (as could have the district court) of the inmate population of St. Clair, which is readily available on the Alabama Department of Corrections website. *See Dimanche v. Brown*, 783 F.3d 1204, 1213 n.1 (11th Cir. 2015) (taking judicial notice of facts published in an annual report on the Florida Department of Corrections' website); *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) ("Under Rule 201 of the Federal Rules of Evidence, a court '*may* take judicial notice on its own' or '*must* take judicial notice if a party requests it and the court is supplied with the necessary information.'" (citation omitted)). The inmate population at St. Clair was 977 at the end of December 2016 and 1,016 at the end of December 2017.[2] In a prison with

[2] Ala. Dep't of Corrs., *Monthly Statistical Report for December 2016*, at 4 (F.Y. 2017), https://doc.alabama.gov/StatReports.aspx; Ala. Dep't of

around 1,000 prisoners, a jury could reasonably conclude that more than 100 inmate-on-inmate assaults per year—that is, around 10% of the inmate population—violence was "the norm or something close to it." *See Purcell*, 400 F.3d at 1322; *Boykins*, 696 F. Supp. 3d at 1080-82.

Taken together, the evidence presented by Mr. Marbury—including the frequency and severity of inmate-on-inmate assaults and the specific incidents occurring in his housing area—demonstrates that the Prison Officials exposed him to conditions posing a substantial risk of serious harm. Under this Court's precedent, the relevant standard is whether violence was sufficiently pervasive and severe to constitute an unreasonable risk to inmate safety. *See Purcell*, 400 F.3d at 1322; *Hale*, 50 F.3d at 1583. A reasonable jury could find that Mr. Marbury has met that burden, and the district court erred in concluding otherwise.

---

Corrs., *Monthly Statistical Report for December 2017*, at 4 (F.Y. 2018), https://doc.alabama.gov/StatReports.aspx.

### B. The District Court Erroneously Disregarded Mr. Marbury's Sworn Pro Se Pleadings, Which Provide Further Evidence from Which a Reasonable Jury Could Conclude that He Faced a Substantial Risk of Serious Harm.

In addition to improperly discounting the statistics revealed in the incident reports and failing to apply this Court's precedent to the level of violence the reports revealed, the district court compounded its errors by failing to appropriately credit Mr. Marbury's sworn complaint and affidavit. By doing so, the district court contravened well-established precedent requiring liberal construction of *pro se* filings. This Court has consistently held that courts must treat *pro se* pleadings with special solicitude and must consider specific factual allegations contained in sworn complaints as evidence for purposes of summary judgment. *Caldwell*, 748 F.3d at 1098 ("We also credit the 'specific facts' pled in plaintiff Caldwell's sworn complaint when considering his opposition to summary judgment."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form.").

Mr. Marbury's filings included detailed, sworn statements describing his repeated requests for protective segregation, his prior

stabbing at the same facility, his observations of ongoing violence between inmates, and the lack of institutional control. *See* Docs. 9 (sworn Amended Complaint), 52 (affidavit with Plaintiff's Initial Disclosures). These allegations were not vague or conclusory—they were specific, consistent, and supported by institutional records produced during discovery. Yet the district court discounted these sworn statements and failed to draw reasonable inferences in Mr. Marbury's favor, as required by this Court's precedent. *See, e.g.*, *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) ("In making [a summary judgment] determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."); *Blanco v. Samuel*, 91 F.4th 1061, 1082 (11th Cir. 2024) (affirming denial of summary judgment after declarants "submitted sworn testimony and declarations" because "it is not [the court's] role to assess the credibility of the [declarants'] assertions").

Specifically, the court improperly faulted Mr. Marbury for not identifying specific inmates involved in unauthorized cell changes, Doc. 87 at 11. But this burden is unreasonable for a *pro se* litigant who has yet to have "had a full opportunity to conduct discovery." *Anderson*,

477 U.S. at 257. In any event, the level of detail of Mr. Marbury's testimony is at most a matter for the jury to consider in deciding how much weight to give that testimony. Perhaps a jury might, for some reason, find it unlikely that Mr. Marbury really witnessed unauthorized cell changes because Mr. Marbury did not specifically catalog exactly who was changing cells. But a jury might also find that detail irrelevant and credit Mr. Marbury's testimony about the lack of administrative control at the prison. The district court had no basis to make that factual determination for itself on summary judgment. *Id.* at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

The magistrate judge and district court did not even address Mr. Marbury's other relevant sworn allegations regarding violence at St. Clair. For example, Mr. Marbury testified that when he requested to be placed in segregation, Warden Specks suggested he "go get a knife or pay [a gang] for some protection." Doc. 9 at 11. He also testified that a prison official took a knife from an inmate after several stabbing

incidents, "only to give it back to the inmate he took it from," *id.*, and that the unauthorized movement of prisoners resulted in the assault of an inmate in a nearby cell, Doc. 52 at 5. This Court has held that the ready availability of weapons in a prison gives rise to substantial risk of violence, *see Marsh*, 268 F.3d at 1028; *Lane*, 835 F.3d at 1307-08, and Mr. Marbury's sworn allegations support an inference that weapons were readily available to inmates at St. Clair. At this stage, in opposition to summary judgment, the district court must credit Mr. Marbury's sworn allegations. *See Caldwell*, 748 F.3d at 1098.

Taken together, the incident report statistics indicating around 200 inmate-on-inmate assaults over two years and Mr. Marbury's sworn allegations regarding unauthorized cell movements, the availability of weapons to inmates, and a prison official's suggestion to pay a gang for protection, provide more than enough evidence, viewed in the light most favorable to Mr. Marbury, for a reasonable jury to conclude that he faced a substantial risk of harm at St. Clair.

## CONCLUSION

The Court should reverse the district court's Order granting Defendants' motions for summary judgment and remand for further proceedings.

Respectfully Submitted,

*/s/ Jill Warnock*

Jill Warnock
*Counsel of Record*
David M. Zionts
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
jwarnock@cov.com

*Counsel for Plaintiff-Appellant*
*Mitchell Marbury*

November 19, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), the brief contains 5,288 words. I further certify that the brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Century Schoolbook font.

*/s/ Jill Warnock*
Jill Warnock

*Counsel for Plaintiff-Appellant*
*Mitchell Marbury*

November 19, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, I caused the foregoing document to be electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to counsel of record.

*/s/Jill Warnock*
Jill Warnock

*Counsel for Plaintiff-Appellant*
*Mitchell Marbury*